UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JENNIFER S. ALDER,

      Petitioner,

v.                                                    Case No. 3:22-cv-1065-TJC-SJH

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

## ORDER

### I.    Status

Petitioner, an inmate of the Florida penal system, is proceeding pro se on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Petitioner challenges a state court (Clay County, Florida) judgment of conviction for second-degree murder, second-degree felony murder, attempted second-degree murder, and armed trafficking in methamphetamine. Petitioner is serving a thirty-year prison sentence. Doc. 1 at 1. Respondents filed a Response (Doc. 6) with exhibits (Docs. 6-1 to 6-28).[1] Petitioner filed a Reply (Doc. 8). This case is

---

[1] The Court will cite exhibits by document and page number as assigned by the Court's electronic case management system.

ripe for review.[2]

## II.    <u>Governing Legal Principles</u>

### A. Standard Under § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016) (explaining AEDPA deference), <u>abrogation in part on other grounds recognized by</u> <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

need not issue an opinion explaining its rationale for the state court's decision

to qualify as an adjudication on the merits. Harrington v. Richter, 562 U.S. 86,

100 (2011). When the state court's adjudication on the merits is unaccompanied

by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that
> does provide a relevant rationale. It should then
> presume that the unexplained decision adopted the
> same reasoning. But the State may rebut the
> presumption by showing that the unexplained
> affirmance relied or most likely did rely on different
> grounds than the lower state court's decision, such as
> alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 584 U.S. 122, 125-26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that

3

state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (parallel citations omitted).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court,

4

either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

> In addressing exhaustion, the United States Supreme Court explained:

>> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (parallel citations omitted).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, 501 U.S. at 747-48; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (parallel citations omitted). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default or (2) a fundamental miscarriage of

6

justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting [<u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)]. Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999) (parallel citation omitted).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (parallel citation omitted). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal quotation marks

9

omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. Thus, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105).

### III.  Factual Background and Procedural History

On February 16, 2012, four deputies with the Clay County Sheriff's Office approached the front door of a house that was suspected to be the site of a methamphetamine lab. Doc. 6-24 at 1. The occupants of the house included Petitioner, Ted Tilley, and Ryan Wilder. Id. at 1-2. After several knocks, the door opened, and Tilley began shooting at the deputies. Id.; see also Doc. 6-4 at 2-3. One deputy was killed; another was injured. Doc. 6-24 at 1. A third deputy shot and killed Tilley as he attempted to flee. Id. Inside the house, law enforcement found methamphetamine and "[m]ultiple methamphetamine lab components." Doc. 6-4 at 7.

Petitioner was Tilley's ex-girlfriend. Id. at 5. On three occasions before

10

the shooting, Petitioner had bought "boxes of pseudoephedrine for the purpose of giving the pills to . . . Tilley so he could use them to cook methamphetamine." Id. She made the last purchase on February 15, 2012—the day before the shooting. Id. Petitioner knew that Tilley and Wilder were "cooking meth in the bathroom," that Tilley "always had a five shot Smith and Wesson revolver on him or near him," and that Tilley had previously said he "was not going to back to prison even if it meant shooting cops." Id. at 6; Doc. 6-24 at 34. On the day of the shooting, Petitioner heard knocking on the front door and "flushed [a packet of methamphetamine] down the toilet." Doc. 6-4 at 6.

Petitioner was charged with armed trafficking in methamphetamine, first-degree felony murder (for the deputy's death), second-degree felony murder (for Tilley's death), and attempted second-degree murder (for the shots Tilley fired at the other deputies). Doc. 6-1. The trafficking charge served as the predicate offense for the felony-murder counts. Id. at 1-2. If convicted of first-degree felony murder, Petitioner would receive a mandatory sentence of life imprisonment. See Fla. Stat. §§ 775.082(1)(a), 782.04(1)(a)2a.

On April 30, 2015, Petitioner pleaded guilty to second-degree murder, second-degree felony murder, attempted second-degree murder, and armed trafficking in methamphetamine. Doc. 6-11; Doc. 6-13. In exchange, the prosecution dismissed the first-degree felony-murder charge, and Petitioner received an agreed-upon sentence of thirty years' imprisonment. Doc. 6-11

11

at 24-27. Petitioner was forty-one years old at the time of sentencing. Doc. 6-9 at 1; Doc. 6-11.

Petitioner appealed, but her appointed counsel found no appealable issues and filed an Anders[3] brief. Doc. 6-16. Petitioner subsequently submitted a pro se brief. Doc. 6-17. The First District Court of Appeal (First DCA) affirmed without a written opinion. Doc. 6-18. Petitioner then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 6-21. Following an evidentiary hearing, the postconviction court denied relief. Doc. 6-24. The First DCA affirmed in an unexplained decision. Doc. 6-28. This federal habeas petition followed. Doc. 1.

## IV.   Analysis

Petitioner raises four grounds of trial-court error and four grounds of ineffective assistance of trial counsel. Id.

### A. Ground One

Petitioner contends that the trial court violated her federal right to due process by denying her motion for change of venue. Id. at 7-8; Doc. 8 at 3. In her motion, Petitioner argued that "a fair and impartial trial [could not be held] in Clay County because of all the adverse publicity generated in the news media and other social media." Doc. 6-6 at 1. The trial court denied the motion as

---

[3] Anders v. California, 386 U.S. 738 (1967).

12

premature, explaining that it would "attempt to impanel a jury prior to taking any action regarding venue." Doc. 6-7 at 3. After pleading guilty, Petitioner challenged the venue ruling on direct appeal. Doc. 6-17 at 7-11. The First DCA rejected Petitioner's argument without explanation. Doc. 6-18.

Respondents correctly contend that Ground One is unexhausted and procedurally defaulted. Doc. 6 at 33-35. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007). To properly exhaust a claim, a petitioner must "do more than scatter some makeshift needles in the haystack of the state-court record." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). Thus, "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 458 (11th Cir. 2015).

In her pro se appellate brief, Petitioner argued that the "trial court erred in denying [her] motion for change of venue." Doc. 6-17 at 7. Petitioner did not, however, "clearly indicate" that she "intend[ed] to bring a federal claim." Preston, 785 F.3d at 458. Instead, she relied entirely on Florida caselaw and statutes to support her argument that a "change of venue was warranted." Doc. 6-17 at 7-11. To be sure, Petitioner made a single, passing reference to a "Due Process violation" that allegedly "result[ed]" from the venue ruling. Id. at 11.

13

But "one passing reference to the Due Process Clause" is "insufficient to notify the state court that [a petitioner] is raising a federal claim." Copeland v. Fla. Dep't of Corr. Sec'y, 851 F. App'x 927, 931 n.1 (11th Cir. 2021).[4] Nowhere in her argument did Petitioner "argue federal standards" or "include references to federal case law." Ramos v. Sec'y, Fla. Dep't of Corr., 441 F. App'x 689, 696-97 (11th Cir. 2011) (petitioner failed to exhaust due process claim by arguing only that admission of evidence "violated his Florida and federal constitutional rights to due process and a fair trial"). Moreover, Petitioner never clarified whether she intended to invoke the federal Due Process Clause or Florida's Due Process Clause. "Under these circumstances, [Petitioner] cannot be said to have fairly apprised the state court of [her] federal . . . claim." Preston, 785 F.3d at 459; see also Gray v. Netherland, 518 U.S. 152, 163 (1996) ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the substance of such a claim to a state court."); Zeigler v. Crosby, 345 F.3d 1300, 1308 n.5 (11th Cir. 2003) (bare assertion that petitioner "was denied due process and a fair trial" was "insufficient to present" a federal claim

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

14

because "this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause").

Petitioner seeks to excuse the default on the ground that she "did not know that she had to preserve for the [f]ederal [c]ourt" the federal nature of her claim. Doc. 8 at 3. But Petitioner's "pro se status and lack of legal knowledge" do not "constitute[] an external impediment justifying [her] failure to exhaust [her] claim." Toole v. McDonough, 379 F. App'x 883, 885 n.5 (11th Cir. 2010); see also McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (petitioner cannot excuse default based on her "failure to act or think like a lawyer"). Accordingly, Ground One is barred from federal habeas review.

Even if Ground One were exhausted, Petitioner would not be entitled to relief because she waived her venue claim by pleading guilty. "A defendant who knowingly and voluntarily enters a plea of guilty waives all nonjurisdictional challenges to [her] conviction." Martin v. Kemp, 760 F.2d 1244, 1246 (11th Cir. 1985). In her signed plea agreement, Petitioner agreed to waive her right "to appeal any disposition [of] issues previously ruled upon by the [c]ourt." Doc. 6-8 at 3. Likewise, she acknowledged during the plea colloquy that she was "giving up [her] right to appeal anything that we did in this case so far," with the sole exception of a "potential claim for ineffective assistance of counsel." Doc. 6-11 at 20. Under Florida law, venue may be waived because it is not a "jurisdictional requisite." Tucker v. State, 459 So. 2d 306, 308 (Fla. 1984); see also Mathis v.

15

State, 419 So. 2d 774, 775 (Fla. 1st DCA 1982) ("Venue may be waived; jurisdiction may not."). Therefore, Petitioner waived her venue claim by pleading guilty.

### B. Grounds Two, Three, and Four

Petitioner argues that the trial court violated her federal right to due process by failing to ascertain "a factual basis" for her guilty plea to second-degree murder, second-degree felony murder, attempted second-degree murder, and armed trafficking in methamphetamine. Doc. 1 at 10-15; see also Doc. 6-17 at 20. During the plea hearing, the prosecution and defense counsel "stipulate[d] to a factual basis for th[e] plea." Doc. 6-11 at 19. According to Petitioner, her plea was "illegal" because the court "failed to determine a factual basis" for it. Id. at 10, 15.

This claim lacks merit.[5] "[T]he due process clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence." Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983); see also Matthew v. Johnson, 201 F.3d 353, 368 (5th Cir. 2000) ("In general, state courts are not required by the Constitution to ensure that a factual basis for a guilty

---

[5] Respondents argue that Grounds Two through Four are procedurally defaulted, but "a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event." Dallas v. Warden, 964 F.3d 1285, 1307 (11th Cir. 2020).

16

plea even exists." (collecting cases)). "Such pleas do not present the issue of voluntariness, the fundamental constitutional consideration when evaluating the validity of a plea, that is raised by pleas coupled with claims of innocence." Wallace, 695 F.2d at 548. Petitioner did not claim innocence when she pleaded guilty. Doc. 6-11. Therefore, the alleged failure to find a factual basis for the plea affords Petitioner no relief.[6] See Massey v. Warden, 733 F. App'x 980, 990 n.6 (11th Cir. 2018) ("[D]ue process does not require a state court to find a factual basis for a guilty plea unaccompanied by a claim of innocence.").

### C. Ground Five

Petitioner argues that trial counsel provided ineffective assistance by failing to inform her of "the possibility of pursuing an independent-act defense at trial." Doc. 1 at 17. "As a general rule, the felony murder rule and the law of principals combine to make a felon liable for the acts of a co-felon." Beachy v. State, 837 So. 2d 1152, 1152 (Fla. 1st DCA 2003). "Nevertheless, under the independent-act doctrine, a defendant whose co-felon exceeds the scope of, and

---

[6] Petitioner vaguely asserts that "defense counsel coerced her into . . . enter[ing] a plea of guilty." Doc. 1 at 15. But Petitioner fails to explain how counsel "coerced" her to plead guilty. Her assertion is thus too conclusory to warrant relief. See Hittson v. GDCP Warden, 759 F.3d 1210, 1265 (11th Cir. 2014) (finding habeas petition "insufficient" because petitioner had "not alleged any facts to support his allegations"). Regardless, during her plea colloquy, Petitioner swore under oath that she was neither "threatened" nor "coerced" into pleading guilty. Doc. 6-11 at 18. Petitioner's "unsubstantiated allegations in [her] federal petition fail to overcome the strong presumption of verity afforded [her] sworn statements made during the plea colloquy." Hartley v. Sec'y, Dep't of Corr., No. 8:08-cv-854-SDM-TBM, 2012 WL 682744, at *8 (M.D. Fla. Mar. 2, 2012).

acts independently of, the original common plan is exonerated from any punishment imposed as a result of the co-felon's independent act." Id.

Petitioner contends that she "had a viable independent-act defense" to the charge of armed trafficking in methamphetamine. Doc. 1 at 17. According to Petitioner, she "did not participate in trafficking . . . methamphetamine," and the drug trafficking at the house "was not [a] reasonably foreseeable consequence of [her] plan to purchase methamphetamine at a discounted price in exchange for pseudoephedrine." Id. Thus, Petitioner allegedly "had a viable independent-act defense to the trafficking in methamphetamine charge and, as a result, the [felony] murder charges stemming from the trafficking in methamphetamine charge." Doc. 6-21 at 13. Petitioner asserts that counsel should have advised her of "the possibility of pursuing an independent-act defense at trial prior to her entering into a plea agreement." Doc. 1 at 17.

The postconviction court heard testimony on this claim at the evidentiary hearing. Doc. 6-24 at 8. Petitioner testified that counsel did not "explain to [her] that [she] could pursue" an independent-act defense. Id. at 17. In fact, according to Petitioner, counsel "never discussed anything, any kind of defense with [her]." Id. Counsel offered a different version of events. He testified that he "may not have used" the term "independent act," but he "certainly explained the scenario to [Petitioner]." Id. at 28. Specifically, counsel discussed with Petitioner her "contention" that she "was just visiting" and "didn't know what

18

was going on" inside the house. Id. Counsel told Petitioner that the prosecution "had a lot of evidence that came directly from her about how she had purchased [pseudoephedrine] on numerous occasions" for Ted Tilley and "she knew he was using it to manufacture methamphetamine." Id. In light of that evidence, counsel explained to Petitioner, "the jury [was] probably going to find [her] guilty of the methamphetamine trafficking." Id. at 29. And "once that happen[ed]," the prosecution would "pound [her] on the First Degree Murder case and the Second Degree Murder case." Id. In short, counsel "didn't think it was impossible to pursue" an independent-act defense, but he "felt very concerned about the likelihood that the jury would buy it." Id. at 32-33.

After the evidentiary hearing, the postconviction court rejected Petitioner's ineffective-assistance claim in a written order. Id. at 6. The court deemed counsel's testimony "credible," finding that he "thoroughly discussed this case with [Petitioner]," including "the independent-act defense." Id. at 5. According to the court, Petitioner "was aware of the pertinent issues and matters of her case when she entered her plea." Id. at 6. Thus, the court concluded that Petitioner "failed to demonstrate deficiency or prejudice." Id.

19

This ruling was reasonable.[7] Strickland requires courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Moreover, because the postconviction court rejected Petitioner's claim on the merits, she cannot prevail unless she shows that "no reasonable jurist could find that [her] counsel's performance fell within the wide range of reasonable professional conduct." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020).

Petitioner cannot overcome the "doubly deferential" standard of review required by Strickland and AEDPA. Cullen v. Pinholster, 563 U.S. 170, 190 (2011). Her claim turned on a credibility determination. At the evidentiary hearing, Petitioner testified that counsel never discussed the independent-act defense with her. Doc. 6-24 at 17. But the postconviction court declined to credit this testimony. Instead, it deemed "credible" counsel's testimony that he "explain[ed]" the independent-act defense to Petitioner and advised her that it

---

[7] Because the First DCA's decision was a summary affirmance, the Court looks through that decision to the postconviction court's decision. See Wilson, 584 U.S. at 125.

was unlikely to succeed. Id. at 4-5. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). Petitioner has not shown by "clear and convincing evidence" that the court's credibility determination was erroneous. 28 U.S.C. § 2254(e)(1). Thus, she cannot overcome the "presumption of correctness" afforded to that determination. Consalvo, 664 F.3d at 845.

Based on the postconviction court's reasonable determination of the facts—that counsel discussed the independent-act defense with Petitioner—counsel's performance was not deficient. Therefore, the postconviction court reasonably rejected Petitioner's claim of ineffective assistance. See Franks, 975 F.3d at 1176 (to prevail on Strickland claim under AEDPA, petitioner must show that "no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct").

### D. **Grounds Six and Seven**

Petitioner argues that trial counsel should have advised her to "reject the State's plea offer and proceed to trial." Doc. 1 at 17-18. According to Petitioner, counsel "knew or should have known" that she had a viable independent-act defense to the "charges of trafficking in methamphetamine and felony murder," and that a jury "could find [that she] did not actually commit attempted second-degree murder." Id. at 18. Nonetheless, counsel allegedly failed to "explain . . .

21

what [the] State would have to prove at trial," and he neglected to inform Petitioner that she "did not commit" the charged offenses. Id. Instead, counsel "advised her to enter into a plea agreement." Id. Petitioner claims that "no reasonable attorney" would have made such a recommendation. Id.

At the evidentiary hearing, counsel testified that he offered Petitioner his "professional opinion" that she should "accept" the thirty-year plea offer. Doc. 6-24 at 30. He based this opinion on his "review of all the evidence," his attendance at the "discovery depositions," and the outcome of co-defendant Ryan Wilder's case, in which he was found guilty of first-degree felony murder and received a mandatory life sentence. Id. at 19, 24-25. Counsel explained to Petitioner that Wilder had raised the same "defenses that we might raise"— including the independent-act defense—and "the jury just didn't buy it." Id. at 27. Counsel also told Petitioner that "it would have been very[,] very risky for her to" take the case to trial in Clay County, where the jurors would likely "have some pretty strong notions about law and order." Id. at 31. In sum, given the "rather strong" evidence against Petitioner, counsel's "goal" was to "prevent her from getting a mandatory life sentence," and he believed the thirty-year plea offer was "the best result we could get." Id. at 24, 28.

The postconviction court held that counsel did not provide ineffective assistance by recommending that Petitioner take the plea deal. Id. at 5-6. Accepting counsel's testimony as "credible," the court noted that counsel

reviewed the evidence, as well as "the verdict reached in Wilder's trial," before "strongly recommend[ing] to [Petitioner] that [she] consider plea negotiations." Id. at 4-5. Because of the first-degree felony-murder charge, Petitioner "was facing a sentence of life without parole." Id. at 6. Counsel "was able to negotiate a significantly reduced sentence" of thirty years' imprisonment. Id. In the court's view, given the "totality of the circumstances," Petitioner failed to show that counsel was "deficien[t]" for advising her to plead guilty. Id.

The rejection of this claim was reasonable.[8] A fairminded jurist could agree that counsel's recommendation to accept the thirty-year plea offer fell within "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. If convicted of first-degree felony murder, Petitioner would receive a mandatory sentence of life imprisonment. See Fla. Stat. §§ 775.082(1)(a), 782.04(1)(a)2a. Counsel reasonably concluded that Petitioner faced "a strong likelihood" of being "found guilty" of that offense and spending the rest of her life in prison. Doc. 6-24 at 27-28. As the postconviction court explained, the evidence showed that Petitioner "obtained around ninety pills within three or four months for Tilley and . . . knew he was using them to manufacture methamphetamine," that she was aware Tilley "carried a .38 gun," that she had

---

[8] Because the First DCA's decision was a summary affirmance, the Court looks through that decision to the postconviction court's decision. See Wilson, 584 U.S. at 125.

23

heard Tilley say "he was not going back to prison even if it meant shooting cops," and that she was "present at the home at the time of the incident." Id. at 24. Moreover, Petitioner's co-defendant Wilder raised the same "defenses that [Petitioner] might raise"—including the independent-act defense—and "the jury just didn't buy it." Id. at 27. In these circumstances, a competent attorney could conclude—as defense counsel here concluded—that a thirty-year plea deal was "the best result [Petitioner] could get to avoid" a life sentence. Id. at 28; see also Chiddo v. United States, No. 21-14263, 2023 WL 3644973, at *4 (11th Cir. May 25, 2023) (counsel was not deficient for advising defendant "to accept [a] plea deal" because "it limited [his] criminal liability" and "sentencing exposure"). Thus, the postconviction court reasonably held that counsel was not deficient for advising Petitioner to accept the plea deal.

### E. Ground Eight

Lastly, Petitioner argues that trial counsel's "cumulative error[s]" "overwhelmingly prejudiced" her. Doc. 1 at 19; Doc. 8 at 19. "Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Here, each individual claim

24

of ineffective assistance lacks merit. Thus, Petitioner's cumulative-error claim necessarily fails.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

3.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of February, 2026.

---

[9] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.



*Timothy J. Corrigan*

TIMOTHY J. CORRIGAN
Senior United States District Judge

TpaP-2

c:
Jennifer S. Alder, #J28969
Counsel of Record